1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   GREGORY MALVEAUX,                       No.  2:18-CV-1952-DMC

12                 Plaintiff,

13        v.                                  MEMORANDUM OPINION AND ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                    Defendant.
16

17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the written consent of all parties, see ECF Nos. 10 and 14, this case is before the

21   undersigned as the presiding judge for all purposes, including entry of final judgment, see 28

22   U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits.  See ECF Nos. 21

23   and 34.

24              The Court reviews the Commissioner's final decision to determine whether it is:

25   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

28   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1  a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

2  including both the evidence that supports and detracts from the Commissioner's conclusion, must

3  be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

4  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

5  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

6  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

7  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

11  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

13  Cir. 1988).

14         For the reasons discussed below, the Commissioner's final decision is affirmed.

15

16                              **I.  THE DISABILITY EVALUATION PROCESS**

17         To achieve uniformity of decisions, the Commissioner employs a five-step

18  sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R.

19  §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

20  
21
   | Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |

22  
23
24
   | Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |

25  
26
27
   | Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

28  / / /

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff first applied for social security benefits in February 2010.  See CAR 16, 133.[1]  Plaintiff alleged disability beginning on November 8, 2011.  See id.  The claim was denied and plaintiff did not appeal.  In December 2011, plaintiff filed a second application.  See id. at 232-41.  Plaintiff's second claim was initially denied.  Plaintiff requested reconsideration and, on reconsideration, the agency found plaintiff was disabled as of May 7, 2012 – the date plaintiff turned 55.  See id. at 92-129. 149-51.  Plaintiff appealed and requested a hearing, challenging the May 7, 2012, disability onset date.  See id. at 163.  In a March 6, 2014, decision, issued following a hearing, Administrative Law Judge (ALJ) Dante M. Alegre found plaintiff was not disabled as of May 7, 2012, or at any time prior to that date.  See id. at 130-146.

Plaintiff requested review by the Appeals Council, which granted review.  See id. at 147-51, 183-84.  The Appeals Council vacated the March 6, 2014, decision and remanded for resolution of specific issues during the period of November 8, 2011, through May 6, 2012.  See id.  In particular, the ALJ was directed to provide further analysis with respect to plaintiff's ability to maintain social functioning during this period.  See id.

Another administrative hearing was held on September 27, 2016.  See id. at 1502-40.  In a January 26, 2017, decision, another ALJ – L. Kalei Fong – concluded plaintiff was not disabled at any time during the relevant time period based on the following relevant findings:

> 1.  During the relevant time period, the claimant had the following severe impairment(s): degenerative disc disease of the lumbar spine, depression, and psychotic disorder;
>
> 2.  During the relevant time period, the claimant did not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3.  During the relevant time period, the claimant had the following residual functional capacity: he could perform light work; the claimant was unable to climb ladders, ropes, or scaffolds; the claimant was limited to occasional climbing of ramps or stairs; the claimant was limited to occasional balancing, stooping, kneeling, crouching, and crawling; the claimant was limited to simple

---

[1]  Citations are the to the Certified Administrative Record (CAR) lodged on February 13, 2019, and supplemented on July 17, 2019, to include the November 2013 hearing transcript.  See ECF Nos. 16 and 29.

4

1      repetitive 1-2 step tasks; the claimant was capable of maintaining
concentration, persistence, or pace for 1-2 step tasks; the claimant
was unable to perform complex or detailed tasks; the claimant was
limited to frequent interaction with supervisors and co-workers; the
claimant was limited to occasional interaction with the public; the
claimant was capable of completing a normal workday and
workweek; the claimant required his work environment to be slow-
paced and non-competitive;

4.      Considering the claimant's age, education, work experience,
residual functional capacity, and vocational expert testimony, there
were jobs that existed in significant numbers in the national
economy that the claimant could have performed during the
relevant time period.

See CAR 16-33.

After the Appeals Council declined further review, this appeal followed.

## III.  DISCUSSION

Plaintiff argues: (1) the ALJ erred in discounting plaintiff's statements and testimony; (2) the ALJ erred in discounting lay witness evidence from plaintiff's wife; (3) the ALJ erred in rejecting the opinions of treating psychiatrist, Dr. Ruxin; and (4) the ALJ's mental residual functional capacity is unexplained.

### A.    **<u>Plaintiff's Credibility</u>**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See <u>id.</u>  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See <u>id.</u>; see also <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007), and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

1    If there is objective medical evidence of an underlying impairment, the

2    Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

3    because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

4    341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

5            The claimant need not produce objective medical evidence of the
        [symptom] itself, or the severity thereof.  Nor must the claimant produce

6            objective medical evidence of the causal relationship between the
        medically determinable impairment and the symptom.  By requiring that

7            the medical impairment "could reasonably be expected to produce" pain or
        another symptom, the Cotton test requires only that the causal relationship

8            be a reasonable inference, not a medically proven phenomenon.

9            80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
        Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

10

11    The Commissioner may, however, consider the nature of the symptoms alleged,

12    including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

13    947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

14    claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

15    testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

16    prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

17    physician and third-party testimony about the nature, severity, and effect of symptoms.  See

18    Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

19    claimant cooperated during physical examinations or provided conflicting statements concerning

20    drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

21    claimant testifies as to symptoms greater than would normally be produced by a given

22    impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

23    Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

24    Regarding reliance on a claimant's daily activities to find testimony of disabling

25    pain not credible, the Social Security Act does not require that disability claimants be utterly

26    incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

27    repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

28    does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

1  Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

2  Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

3  claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

4  restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

5  claimant was entitled to benefits based on constant leg and back pain despite the claimant's

6  ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

7  activities are not easily transferable to what may be the more grueling environment of the

8  workplace, where it might be impossible to periodically rest or take medication").   Daily

9  activities must be such that they show that the claimant is ". . .able to spend a substantial part of

10  his day engaged in pursuits involving the performance of physical functions that are transferable

11  to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

12  before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

13  Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

14          At Step 4, the ALJ considered plaintiff's subjective complaints in determining

15  plaintiff's residual functional capacity.  See CAR 25-29.  The ALJ summarized plaintiff's

16  complaints as follows:

17  
18          The claimant alleged disability by way of debilitating symptoms resulting
           from degenerative disc disease of the lumbar spine and depression.  At the
           hearing, the claimant testified that he has frequent and severe back pain.
19          The claimant indicated he was limited due to pain.  The claimant advised
           he would lose balance, and was precluded from prolonged standing or
20          walking.  The claimant stated he had difficulty lifting heavy weight.  The
           claimant represented he was restricted in activities of daily living.  The
21          claimant advised he required intermittent assistance from his wife.  The
           claimant testified his condition was complicated by mental health issues.
22          The claimant endorsed symptoms of anxiety, nervousness, sweating, and
           stress.  The claimant indicated he had particular anxiety when traveling in
23          unfamiliar places or in large crowds.  The claimant reported he was
           limited in concentration and completing tasks.  The claimant stated he had
24          unusual fears related to violence.  The claimant represented he was unable
           to sustain work function due to the combined effect of his physical and
25          mental impairments. . . .

26          Id. at 25.

27  / / /

28  / / /

7

1          After discussing the medical evidence of record, the ALJ then provided the

2   following analysis of plaintiff's subjective complaints:

3          Based on the review of the evidence above, the undersigned finds that the
           claimant's account of the severity of symptoms, as well as his allegations
4          regarding functional limitations, are not fully substantiated for the
           following reasons:

5
           The claimant described daily activities that were not limited to the extent
6          one would expect, given the complaints of disabling symptoms and
           limitations.  At one point or another in the record (found in forms
7          completed in connection with the application and appeal ,in medical
           reports or records, and in the claimant's testimony), the claimant reported
8          the following daily activities:  took college courses, performed personal
           care tasks, prepared daily meals, completed some household chores, left
9          his house alone, shopped in stores, counted change, read wrote stories,
           used the computer, watched television, and attended church and social
10         events. . . .  Such activities show the claimant was at least capable of the
           above residual functional capacity.
11
           The claimant did not generally receive the type of medical treatment one
12         would expect for a totally disabled individual.  During the period at issue,
           the claimant sought limited and conservative care for back pain, consisting
13         primarily of medication (Ex. 4F).  Clearly, one would expect more
           frequent and aggressive treatment if the claimant were disabled, as
14         alleged.  As to the claimant's mental impairment the claimant attended
           monthly office visits for psychotropic medication management (Ex. 5F
15         and 20F).  Notably, physicians reported improvement of mental health
           symptoms while compliant with medication (Ex. 5F, page 47 and 20F,
16         pages 24 and 25).  Since the alleged onset date, various mental status
           examinations showed normal results (Ex. 4F, 5F, and 20F).
17
           There is evidence that the claimant stopped working for reasons not
18         related to the allegedly disabling impairment(s).  The claimant admitted he
           stopped working in August 2006, but does not allege onset of disability
19         until November 2011 (Ex. 2E).  Such evidence suggests the claimant
           stopped working for reasons unrelated to disability.
20
           CAR 28.
21

22         Plaintiff argues the ALJ improperly relied on plaintiff's limited daily activities,

23   which plaintiff contends the ALJ mischaracterized.  Plaintiff also argues the ALJ erred by relying

24   on plaintiff's course of treatment.  Finally, plaintiff asserts the ALJ's reliance on plaintiff's work

25   history is "neither here nor there."

26   / / /

27   / / /

28   / / /

1              1.     <u>Daily Activities</u>

2              According to plaintiff: "The first reason for this [the ALJ's adverse credibility

3      finding] relies on the mischaracterized daily activities. . . ."  ECF No. 21, pg. 13.  In a footnote,

4      plaintiff adds:

5              There is one additional item: "took college courses."  The
               provenance of this must be the testimony we don't have (Cf. transc., p.
6              137; cf. trans., p. 351, fn. 5, where the undersigned recollects that Mr.
               Malveaux testified in a completely unqualified way about taking *online*
7              college classes, and probably *not* during this period in the months
               following his serious schizophrenic breakdown.
8
               <u>Id.</u> at pg. 14, n.9.
9

10     Plaintiff provides no further support for this argument.

11             In connection with his application, plaintiff submitted two function reports.  <u>See</u>

12     CAR 278-85 (Exhibit 3E) and 301-09 (Exhibit 7E).  The first report was submitted on February

13     21, 2012.  <u>See id.</u> at 278-85.  In this report, plaintiff stated he lives in an apartment with family.

14     <u>See id.</u> at 278.  He also stated that he does not take care of anyone or any pets, and that no one

15     helps him with pet care.  <u>See id.</u> at 279.  For personal care, plaintiff stated that he has difficulty

16     dressing.  <u>See id.</u>  He did not identify any other areas of personal care that are affected by his

17     limitations.  <u>See id.</u>  Plaintiff stated that he does not need reminders to address personal care

18     needs, grooming, or taking medication.  <u>See id.</u> at 280.  Plaintiff stated that he does no household

19     or yard chores, though he did not elaborate.  <u>See id.</u> at 280-81.  According to plaintiff, he goes

20     outside two to three times per week to walk for exercise.  <u>See id.</u> at 282.  He also stated that he

21     shops in stores for food "once a week or more."  <u>Id.</u>  Plaintiff stated he engages in social activities

22     such as talking to friends and going to church and other "events" once or twice a week.  <u>Id.</u>

23             In a second report, submitted on October 15, 2012, plaintiff did not list any areas

24     of personal care in which he has difficulty.  <u>See id.</u> at 302.  He stated he prepares his own meals

25     once or twice a week.  <u>See id.</u> at 303.  Plaintiff reported that he takes out the trash, though he

26     cannot do "a lot of lifting."  <u>Id.</u>  Plaintiff reported he shops for groceries.  <u>See id.</u>  As with the first

27     report, plaintiff also indicated he socializes and attends church.  <u>See id.</u> at 305.

28     / / /

1          Plaintiff's argument is unpersuasive.  According to the ALJ, plaintiff's daily

2    activities included shopping in stores, performing personal care tasks, and attending church.  See

3    CAR28.  The Court finds this description to be consistent with plaintiff's written reports.

4    Plaintiff has cited no evidence suggesting otherwise.  As to the ALJ's reference to plaintiff

5    reportedly taking college courses, plaintiff states he attended online college for outside the time

6    period relevant to this case.  Defendant concedes the point.  See ECF No. 34, pg. 20, n.5.  In any

7    event, the ALJ's citations to substantial evidence regarding plaintiff's daily activities support the

8    adverse credibility finding because the evidence shows activities inconsistent with totally

9    disabling symptoms, as alleged.[2]

10         2.    Course of Treatment

11         Plaintiff contends:

12
      The second reason relies on characterizing Mr. Malveaux's
13   "medical treatment" as not being sufficiently "frequent and aggressive" to
reflect disability. (Transc., p.28) The AC specifically wrote, "Dr. Ruxin
14   has also reported seeing the claimant every 3–6 weeks (citation omitted)
which is contra to the hearing decision's rejection of his [Dr. Ruxin's]
15   opinion." (Transc., p.150) So both decisions misunderstood frequency.
They also reflect no respect for a reasonable reading of treating Dr.
16   Ruxin's two medical source statements. In the first, Dr. Ruxin wrote,
"Initially improved, then got more paranoid. Trying to assess severity of
17   mood impairment." (Transc., p.706) In the second, where his assessments
were more limiting, Dr. Ruxin wrote, "May still be having some auditory
18   hallucinations (footnote omitted) even though patient denies this," (transc.,
p.753), and "Paranoia and AH have decreased with treatment but med
19   compliance with adequate dose is challenging." (Transc., p.754) None of
this, including Dr. Ruxin's worsening assessments, comports with the
20   decision's notion that Mr. Malveaux's "medical treatment" belied the
severity of his symptom allegations.  (footnote omitted).

21       ECF No. 21, pgs. 13-14.

22   / / /

23   / / /

24   / / /

25       [2]    In the context of the ALJ's citation to plaintiff's daily activities, the Court also
finds no error in the lack of specific findings as to whether plaintiff's daily activities showed an
26   ability to engage in sustained work-related activities.  The failure to make such findings
constitutes error only when the ALJ relies solely on daily activities.  Vertigan, 260 F.3d at 1050.
27   In this case, the ALJ relied on other factors to discount plaintiff's credibility, such as a
conservative course of treatment and work history.  These other factors lend further support to the
28   ALJ's partial reliance on plaintiff's daily activities.

1    Even assuming the ALJ mischaracterized the frequency of plaintiff's treatment, the

2    ALJ properly cited the conservative nature of plaintiff's treatment to discount plaintiff's

3    credibility.  As the ALJ noted, plaintiff's treatment consisted primarily of medication, which

4    caused improvement.  See CAR 28.  Again, plaintiff points to no evidence of record indicating

5    more than conservative treatment to address symptoms he claims are totally disabling.

6                    3.    Work History

7                    Regarding the ALJ's reference to plaintiff's work history, plaintiff states:

8                        That Mr. Malveaux stopped working in 2006 while his mental
                         breakdown was in 2011 is neither here nor there regarding the veracity of
9                        Mr. Malveaux's "testimony" about his mental impairment.  (Trans., p. 28).

10                   ECF No. 21, pg. 14.

11                   The Court disagrees.  While plaintiff alleges he became unable to work in

12   November 2011, the fact remains that he actually stopped working in August 2006.  If he was

13   unable to work in 2006, it was reasonable for the ALJ to conclude that plaintiff was being less

14   than truthful when he stated he became unable to work in 2011 due to disability.  Plaintiff makes

15   no attempt to explain the inconsistency.

16          **B.    Lay Witness Evidence**

17                   In determining whether a claimant is disabled, an ALJ generally must consider lay

18   witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915,

19   919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

20   testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

21   evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100

22   F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of

23   lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.

24   When rejecting third party statements which are similar in nature to the statements of plaintiff, the

25   ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement.  See

26   Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving

27   rejection of a third-party family member's testimony, which was similar to the claimant's, for the

28   same reasons given for rejection of the claimant's complaints).

1    At Step 4, the ALJ considered lay witness evidence from plaintiff's wife.  See

2  CAR 25, 28-29.  The ALJ stated:

> Regarding the third-party statements, Ms. Malveaux corroborated some
> subjective complaints reported by the claimant.  These statements are
> given some weight regarding the daily activities performed by the
> claimant.  As stated, Ms. Malveaux admitted the claimant remained
> capable of performing personal care tasks, completing household chores,
> shopping in stores, using public transportation, reading the bible, watching
> television, attending family events, and counting change (Ex. 4E and 8E).
> These accounts of daily activities are based on personal observation and
> are consistent with other evidence.  However, the witness also provided
> opinions about physical limitations and mental limitations.  These
> opinions regarding functional limitations are inconsistent with medical
> opinions of record, the objective findings and the record as a whole.  The
> lack of substantial support from the other evidence of record renders these
> opinions less persuasive.

> Id. at 28-29.

Plaintiff argues the ALJ erred by failing to consider Ms. Malveaux's hearing

testimony.  See ECF No. 21, pg. 11.  Plaintiff also contends the ALJ mischaracterized Ms.

Malveaux's written function reports.  See id. at 11-12.

1.    Hearing Testimony

According to plaintiff:

> First, this decision doesn't even evaluate Ms. Malveaux's
> testimony, as opposed to its supposed review of her written function
> reports, which really just repeats decision #2, despite the AC's correction
> of error. Recall that this third ALJ expressly avowed he wouldn't credit
> Ms. Malveaux and didn't want to hear her testimony. (See fn.1.) Social
> Security Ruling 16–3p, 20 C.F.R. §§404.1529/416.929, and case law
> required Ms. Malveaux's testimony be evaluated and considered
> (e.g., Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) ["Lay
> testimony as to a claimant's symptoms is competent evidence which the
> Secretary must take into account, (citing Dodrill v. Shalala, 12 F.3d 915,
> 919 (9th Cir. 1993)), unless he expressly determines to disregard such
> testimony, in which case 'he must give reasons that are germane to each
> witness.' (Quoting id.)"]) — a fortiori, where the AC remand order
> effectively held that decision #2 had misrepresented Ms. Malveaux. This
> decision's failure even to evaluate her testimony, aside from its
> perpetuation of #2's mischaracterization of her written statements,
> warrants reversal.

> ECF No. 21, pg. 11.

/ / /

/ / /

1   In a footnote, plaintiff adds:

2           And now her testimony isn't in our record, so whether the error is
3       harmless can't be determined. However, *Stout v. Commissioner, Soc. Sec.
        *Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006) held "that where the ALJ's
        error lies in a failure to properly discuss competent lay testimony
4       favorable to the claimant, a reviewing court cannot consider the error
        harmless unless it can confidently conclude that no reasonable ALJ, when
5       fully crediting the testimony, could have reached a different disability
        determination."
6
7           Id. at 11, n.7.

8           As the ALJ noted, Ms. Malveaux testified on November 15, 2013.  See CAR 16.

9   There is, however, no discussion of this testimony in the hearing decision.  Thus, on the face of

10  the hearing decision, the ALJ failed to consider relevant evidence of record.[3]  Defendant appears

11  to concede the issue by not offering any response to plaintiff's argument.

12          Plaintiff's argument that the error cannot be considered harmless is misplaced.  In

13  support of her argument, cites Stout v. Commissioner, 454 F.3d 1050 (9th Cir. 2006).  In Stout,

14  the Ninth Circuit considered an ALJ's silent disregard of lay witness testimony.  See id. at 1053-

15  54.  Lay witnesses had testified about the plaintiff's "inability to deal with the demands of work"

16  due to alleged back pain and mental impairments.  Id.  The witnesses, who were former co-

17  workers, testified about the plaintiff's frustration with simple tasks and uncommon need for

18  supervision.  See id.  Noting that the lay witness testimony in question was "consistent with

19  medical evidence," the court in Stout concluded that the "ALJ was required to consider and

20  comment upon the uncontradicted lay testimony, as it concerned how Stout's impairments impact

21  his ability to work."  454 F.3d at 1053.   The Commissioner conceded that the ALJ's silent

22  disregard of the lay testimony contravened Ninth Circuit case law and the controlling regulations,

23  and the Ninth Circuit rejected the Commissioner's request that the error be disregarded as

24  harmless.  See id. at 1054-55.  In doing so, the court stated that the ALJ's failure to consider

25  uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable

26  ALJ, when fully crediting the testimony, could have reached a different disability determination."

27  _____

        [3]     While a second hearing was held in September 2016 following the Appeals
28  Council remand, Mrs. Malveaux did not testify.  See CAR 1503-40 (transcript of September 27,
    2016, hearing).

13

1    Id. at 1056; see also Robbins v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006)

2    (citing Stout, 454 F.3d at 1056).

3         The ALJ, however, need not discuss all evidence presented.  See Vincent on

4    Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain

5    why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700,

6    706 (3d Cir.1981).  Applying this standard, the court held that the ALJ properly ignored evidence

7    which was neither significant nor probative.  See id. at 1395.  As to a letter from a treating

8    psychiatrist, the court reasoned that, because the ALJ must explain why he rejected

9    uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was

10   controverted by other medical evidence considered in the decision.  See id.  As to lay witness

11   testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court

12   concluded that the evidence was properly ignored because it "conflicted with the available

13   medical evidence" assessing the plaintiff's mental capacity.  Id.

14        In Stout, the court found the ALJ erred by disregarding uncontradicted lay witness

15   evidence.  Stout is inapplicable in this case because Ms. Malveaux's November 2013 testimony is

16   not uncontradicted.  Ms. Malveaux's testimony, which is consistent with the limitations alleged

17   by plaintiff, is contradicted by plaintiff's daily activities, course of treatment, work history, all as

18   discussed above, as well as the medical opinion evidence, as discussed below.  As with the lay

19   witness evidence at issue in Vincent, the ALJ did not err in failing to discuss Ms. Malveaux's

20   contradicted November 2013 hearing testimony.

21             2.    Written Function Reports

22        Plaintiff contends the ALJ mischaracterized Ms. Malvezux's written function

23   reports.  Plaintiff argues:

24             And by repeating #2 word-for-word, this decision repeats the
             mischaracterization of Ms. Malveaux's written statements pointed out by
25           the AC. Ms. Malveaux completed two written function reports (transc.,
             pp.286–293, 310–318); a full demonstration of the mischaracterization of
26           these would consume considerable space. The decision claims "Ms.
             Malveaux admitted the claimant remained capable of performing personal
27           care tasks, completing household chores, shopping in stores, using public
             transportation, reading the bible, watching television, attending family
28           events and counting change." (Transc., p.28) In fact, she wrote that her

                                         14

husband had problems with personal care (transc., pp.287, 311, 312), problems with household chores (transc., pp.288, 312, 313), and couldn't shop in stores or use public transportation without accompaniment; indeed, he would start to shake in public. (Transc., pp.289, 290, 292, 293, 313, 314, 316) (footnote omitted). Mr. Malveaux's ability to read the Bible and watch television might be questioned on concentration grounds, since Dr. Ruxin said this was impaired in the first of his two assessment, (transc., pp.704), and prove little about work-functioning. The decision misrepresents Ms. Malveaux about Mr. Malveaux's ability to attend family events. (Compare transc., pp.290, 291, 314, 315).

ECF No. 21, pgs. 11-12.

In connection with plaintiff's application, Ms. Malveaux submitted two third-party function reports. <u>See</u> CAR 286-93 (Exhibit 4E) and 310-18 (Exhibit 8E). In these reports, Ms. Malveaux stated plaintiff "sometimes" needed help with bathing, but otherwise had no problems with personal care. <u>Id.</u> She also stated plaintiff can prepare simple meals on a daily basis. <u>See id.</u> Ms. Malveaux stated plaintiff takes out the trash. <u>See id.</u> She reported that plaintiff is able to walk, ride in a car, and use public transportation, and that when plaintiff's goes out he can do so alone. <u>See id.</u> Ms. Malveaux stated plaintiff can shop in stores, mostly with her assistance. <u>See id.</u> She stated plaintiff can pay bills, count change, handle a savings account, and use a checkbook. <u>See id.</u> Ms. Malveaux stated plaintiff spends time with others, including family and friends, and attends church. <u>See id.</u> She stated plaintiff can walk for 2 blocks and then has to rest. <u>See id.</u>

The ALJ characterized Ms. Malveaux's written statements as follows:

In third-party function reports, the claimant's wife, J. Malveaux, corroborated some of the claimant's subjective complaints. Ms. Malveaux represented the claimant was limited in lifting, squatting, standing, walking, kneeling, stair climbing, completing tasks, concentration and understanding. Ms. Malveaux estimated the claimant was capable of walking 1-2 blocks before he required a break. She stated the claimant was able to pay attention for 15 minutes. Ms. Malveaux advised the claimant dealt poorly with stress or change. She advised the claimant was less social than prior to onset. Despite the alleged limitations, Ms. Malveaux reported the claimant remained capable of performing personal care tasks, completing household chores, shopping in stores, using public transportation, reading the bible, watching television, attending family events, and counting change (Ex. 4E and 8E).

CAR 25.

///

1  Other than a reference to an ability to pay attention for 15 minutes – which does not appear in

2  either of Ms. Malveaux's statements – the Court finds that the ALJ's characterization of Ms.

3  Malveaux's statements is accurate.  Plaintiff's offers no argument as to the reference to an ability

4  to pay attention for 15 minutes, and the Court does not find that this single error unfairly

5  misrepresents the totality of Ms. Malveaux's statements.  Ultimately, Ms. Malveaux's statements

6  are consistent with those offered by plaintiff which, for the reasons discussed above, the ALJ

7  properly discounted.  See Valentine, 574 F.3d at 694 (9th Cir. 2009).

8          **C.**    **Dr. Ruxin's Opinions**

9          "The ALJ must consider all medical opinion evidence."  Tommasetti v. Astrue,

10  533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not

11  explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir.

12  2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical

13  opinion over another.  See id.

14          Under the regulations, only "licensed physicians and certain qualified specialists"

15  are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue,

16  674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on

17  an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it

18  rests on his own independent examination of the claimant."  Tonapetyan v. Halter, 242 F.3d 1144,

19  1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute

20  substantial evidence when the opinions are consistent with independent clinical findings or other

21  evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social

22  workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec.

23  Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants

24  also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).

25  Opinions from "other sources" such as nurse practitioners, physician assistants, and social

26  workers may be discounted provided the ALJ provides reasons germane to each source for doing

27  so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874

28  F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance

1    when opinions from "other sources" may be considered acceptable medical opinions).

2            The weight given to medical opinions depends in part on whether they are

3    proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

4    821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

5    professional, who has a greater opportunity to know and observe the patient as an individual, than

6    the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

7    Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the

8    opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th

9    Cir. 1990).

10           In addition to considering its source, to evaluate whether the Commissioner

11   properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in

12   the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

13   uncontradicted opinion of a treating or examining medical professional only for "clear and

14   convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

15   While a treating professional's opinion generally is accorded superior weight, if it is contradicted

16   by an examining professional's opinion which is supported by different independent clinical

17   findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

18   1041 (9th Cir. 1995).

19           A contradicted opinion of a treating or examining professional may be rejected

20   only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d

21   at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the

22   facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

23   finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

24   legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

25   professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

26   without other evidence, is insufficient to reject the opinion of a treating or examining

27   professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

28   conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

1    1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

2    also Magallanes, 881 F.2d at 751.

3            At Step 4, the ALJ evaluated the medical opinions of record.  See CAR 29-31.  In

4    reaching a conclusion regarding plaintiff's residual functional capacity, the ALJ considered

5    opinions offered by examining physician, Dr. Chang, treating physician, Dr. Ruxin, a medical

6    expert, Dr. Akins, as well as the state agency physicians.  See id.  As to Dr. Chang, the ALJ gave

7    "great weight" to the doctor's assessment that plaintiff was, during the relevant time period,

8    capable of light work with frequent postural activities.  Id. at 29.  The ALJ, however, rejected Dr.

9    Chang's opinion that plaintiff was limited due to left shoulder pain.  See id.  The ALJ found this

10   limitation non-severe.[4]  Similarly, the ALJ partially accepted the state agency physicians'

11   opinions.  See id.

12           The ALJ accepted Dr. Ruxin's February 2012 opinion that plaintiff had good

13   ability to complete simple tasks and maintain attendance, and fair ability to complete complex

14   tasks, maintain concentration and attention, complete a normal workday/workweek, and respond

15   to change.  See id. (citing Exhibit 14F). As to Dr. Ruxin's amended opinion, rendered in April

16   2012, the ALJ gave only "some weight" to the doctor's opinion that plaintiff had poor ability to

17   complete a normal workday/workweek.  See id. at 30 (citing Exhibit 19F).  Plaintiff argues the

18   ALJ erred with respect to consideration of his treating physician, Dr. Ruxin.[5]

19           As to Dr. Ruxin's February 2012 opinion, the ALJ stated:

20           In February 2012, treating physician, Dr. Ruxin, opined as follows: the
             claimant has good abilities to complete simple tasks and maintain
21           attendance.  The claimant has fair abilities to complete complex tasks,
             maintain concentration/attention, complete a normal workday/workweek
22           and respond to change (Ex. 14F).  This assessment is given great weight,
             as it is consistent with other medical opinion evidence and the record as a
23           whole.

24           CAR 29.

25   / / /

26

27        [4]    Plaintiff does not challenge this finding.
          [5]    Plaintiff makes no arguments regarding the ALJ's analysis of any of the other
28   medical opinions.

18

Regarding the doctor's amended opinion of April 2012, the ALJ stated:

In April 2012, treating physician, Dr. Ruxin amended his assessment, and opined as follows: the claimant has fair abilities to complete simple and complex tasks, maintain concentration/attention, maintain attendance and respond to changes. The claimant has poor ability to complete a normal workday/workweek without interruption from a psychologically based symptom (Ex. 19F). This assessment is given some weight to the extent it shows the claimant is capable of simple repetitive tasks with moderate limitations in the ability to maintain concentration and attention. These findings are consistent with medical opinion evidence, treatment reports, and objective evidence.

The undersigned gives little weight to the assessment of poor ability to complete a normal workday/workweek without interruption from a psychologically based symptom. According to SSR 96-2p, controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. In the instant case, Dr. Ruxin did not support his assessment with ample objective evidence. First, clinical observations from contemporaneous reports (in February and April 2012) indicate logical thought processes and fair judgment. Testing indicates Global Assessment [of] Functioning scores varying from 41-60, consistent with moderate to serious symptoms. One would expect consistently extreme findings, if the claimant had poor ability to complete a normal workday/workweek.

Here, it is noted that medical expert, Dr. Akins, reviewed the findings and concluded there was not sufficient evidence for "poor ability" or "marked limitation" in the area. In rendering this opinion, Dr. Akins cited to the Global Assessment [of] Functioning scores (from February to June 2012), treatment reports and objective evidence.

In addition to the objective evidence, the undersigned notes that treating physicians found the claimant clinically improved or stable with medication (Ex. 20F and Hearing Testimony, 9/27/2016). This finding further undercuts Dr. Ruxin's opinion.

Lastly, the finding is inconsistent with the claimant's own account of daily activities. As stated, the claimant was capable of attending college courses, completing household chores, shopping in stores, and using the computer. Dr. Ruxin fails to explain how the claimant would be capable of extensive daily activities if he had poor to no ability to complete a normal workday/workweek (as indicated [in] the reports).

CAR 30.

As to the ALJ's analysis of Dr. Ruxin's February 2012 opinion, plaintiff argues:

. . .[I]t insincerely gave "great weight" to Dr. Ruxin's first, less disabling, assessments, (transc., p.29), claiming that its many 'Fair's (transc., p.706) were consistent with the "other opinion evidence and the record as a whole." (Transc., p.29) Presumably this means this medical source statement was consistent with the decision's mental residual

19

functional capacity, since the decision said its RFC was "supported by . . . the mental assessments of [nonexamining Dr. Akins's hearing testimony] and State agency, findings in the prior decision [Considering the AC reversal, this should be a bad reason] and the record as a whole," (transc., p.31), and Dr. Akins got great weight because "consistent with treatment records, accounts of daily activities and the record as a whole." (*Id.*) However, what the form Dr. Ruxin filled out says "Fair" means is "The evidence supports the conclusion that the individual's capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described." (Transc., p.706) This is consistent with Dr. Ruxin's statement "Initially improved, then got more paranoid. Trying to assess severity of mood component." (*Id.*) And Dr. Ruxin's initial assessments no more clearly support the decision's specific (nondisabling) MRFC than they contradict it. This decision disingenuously coopts, which is to say misuses, Dr. Ruxin's first MSS.

        Note that if one takes this decision literally — a mistake, since most of it just reiterates the reversed decision #2 — then the decision's crediting of this first, uncertain, Dr. Ruxin MSS followed by its discrediting of his more certain and disabling second MSS demonstrates this decision (which didn't even want to hear from Ms. Malveaux, and which repeated and relied on the earlier decision's mischaracterization of Mr. Malveaux's daily activities and symptoms) to be hubristically confident in its greater wisdom than the psychiatrist who the AC remand said tracked Mr. Malveaux during these critical post-breakdown months "every 3–6 weeks," (transc., p.150), and recommended recontacting. (Transc., p.151)

ECF No. 21, pgs. 14-15.

Regarding the ALJ's analysis of Dr. Ruxin's amended opinion of April 2012, plaintiff states:

        . . . [T]his decision again — without explaining why this is so — claims this too as support for its MRFC (transc., p.30), finding only Dr. Ruxin's assessment of 'poor' for completing workdays and work weeks (transc., p.754) to be inconvenient and rejecting it. (*Id.*)

        First, cherry-picking out inconvenient portions of medical opinions is problematic. (*Holohan v. Massanari,* 246 F.3d 1195, 1207 (9th Cir. 2001) [cannot rely on selected evidence and ignore other, contradictory evidence; *Gallant v. Heckler,* 753 F.2d 1450, 1455–56 (9th Cir. 1984); *Switzer v. Heckler,* 742 F.2d 382, 385–386 (7th Cir. 1984) [cannot pick and choose]; *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999) [cannot affirm by isolating specific quantum of evidence].)

        Second, the decision's expressed rationale does not rest on substantial evidence with adequate explanation and is legally backward.

        The decision seems to say that evidence showing "logical thought processes and fair judgment" contradict Dr. Ruxin (transc., p.30), but Dr. Ruxin's MSS reflects goal-directed thought processes and mildly impaired judgment (transc., p.753), which is consistent with this; the decision omits the many *abnormal* signs/symptoms, which would support the obvious bottom line of Dr. Ruxin's MSS that Mr. Malveaux is disabled. The decision also asserts that Mr. Malveaux's *serious* to moderate global assessments of functioning contradict Dr. Ruxin's assessment of 'poor'

1

2

3

4

5

6

7

8

9

10

11

12

13

14

ability to complete workdays and work weeks (transc., p.30), but at least without further explanation this doesn't follow; *serious* to moderate assessments of global functioning are not so inherently inconsistent with inability to consistently complete workdays and work weeks as to make the decision's non-expert, non-treating, second-guessing superior to the opinion of a treating specialist who saw Mr. Malveaux every three to six weeks.

         The decision also gives two factually and one legally wrong reason for discounting Dr. Ruxin. The first factually wrong reason is "that treating physicians found the claimant clinically improved or stable with medication" (transc., p.30); but this is contradicted by treating Dr. Ruxin's statements that Mr. Malveaux at first improved and then regressed (transc., p.706), might still really be having auditory hallucinations (transc., p.753), and that "med compliance with adequate dose was challenging." (Transc., p.754) The other factually wrong reason is yet further reliance on the incorrect view of Mr. Malveaux's daily activities discussed before and significantly contradicted by the AC. The legally wrong reason is to cite nonexamining Dr. Akin as having reviewed "findings" consisting significantly of *Dr. Ruxin's* information, and having not found "sufficient evidence for 'poor ability'." (Transc., p.30) Ordinarily, more weight should be given a treating doctor's opinion, (*Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995)), and "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." (*Id.* at 831, citing *Pitzer v. Sullivan,* 908 F.2d 502, 506 n.4 (9th Cir. 1990) and *Gallant v. Heckler, supra,* 753 F.2d at 1456.) Moreover, of course, Dr. Akin didn't even address MRFC, only listing 12.03.

15

ECF No. 21, pgs. 15-16.

16

17

18

19

20

21

22

23

24

25

26

         While plaintiff's arguments are difficult to discern, the Court finds no error with respect to the ALJ's analysis of Dr. Ruxin's February 2012 opinion, which the ALJ accepted.  In February 2012, Dr. Ruxin opined plaintiff has good ability to complete simple tasks and fair ability to complete a normal workday/workweek.  In April 2012,  Dr. Ruxin opined plaintiff has fair ability to complete simple tasks and poor ability to complete a normal workday/workweek.  By citing Dr. Akins' medical expert testimony that the evidence does not establish "poor ability" in any category of mental functioning, the ALJ provided a valid reason, supported by the record, to discount the change in Dr. Ruxin's opinion from "good ability" and "fair ability" to "poor ability."  In addition, the change from "good ability" to "fair ability" to complete simple tasks is of no moment given that the ALJ accounted for both by limiting plaintiff to simple one- and two-step tasks.

27

/ / /

28

/ / /

1    As to the ALJ's reliance on Dr. Akins' testimony that the evidence does not

2  establish "poor ability," plaintiff argues that the ALJ erred by relying on a non-examining source

3  to discount the opinion of a treating source.  This argument is unpersuasive for two reasons.

4  First, while the Commissioner must usually defer to an uncontradicted opinion of a treating

5  source, Dr. Ruxin's April 2012 opinion in this case is contradicted, both by the opinion of Dr.

6  Akins and Dr. Ruxin's own February 2012 opinion.  Second, on this record, the ALJ may

7  properly rely on the opinion from a non-examining source.

8    **D.    Mental Residual Functional Capacity**

9    In determining residual functional capacity, the ALJ must assess what the plaintiff

10  can still do in light of both physical and mental limitations.  See 20 C.F.R. §§ 404.1545(a),

11  416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual

12  functional capacity reflects current "physical and mental capabilities").  Where there is a

13  colorable claim of mental impairment, the regulations require the ALJ to follow a special

14  procedure.  See 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The ALJ is required to record pertinent

15  findings and rate the degree of functional loss.  See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

16    As stated above, for the time period at issue the ALJ concluded plaintiff had the

17  mental residual functional capacity to engage in simple repetitive one- to two-step tasks, maintain

18  concentration, persistence, and pace for one- to two-step tasks, perform frequent interactions with

19  supervisors and co-workers, and complete a normal workday/workweek.  See CAR 23-24.

20  Plaintiff was, however, limited to occasional interaction with the public and a slow-paced and

21  non-competitive work environment.  See id. at 24.  Plaintiff was incapable of performing detailed

22  or complex tasks.  See id.

23    According to plaintiff, the ALJ's mental residual functional capacity determination

24  is unexplained.  Plaintiff argues the ALJ's mental residual functional capacity assessment is

25  flawed due to the errors argued above.  Plaintiff adds:

26        The nonexaminers didn't bequeath this decision anything other
        than its simple 1–2 step task limitation; indeed, they posited no public
27        contact, as the decision realized. (Transc., p.30) The decision rejected this
        based on the same mischaracterization of Mr. Malveaux's daily activities
28

22

1   the AC said on remand was wrong and which this brief also shows to be
    wrong. (*Id.*) Even if this basis were correct, it still leaves unexplained the
2   precise limitations of *frequent* coworker and supervisor contact and
    *occasional* public contact. (Cf. transc., p.31, where 'moderate' limitation
3   in social functioning is asserted as "fully accommodated by the limitations
    for frequent contact with supervisors and co-workers and occasional
4   contact with the public" as *ipse dixit*.).
            Nonexamining Dr. Akin at the hearing can't be the basis, because
5   he only testified about the mental severity criteria; he expressed no
    MRFC.
6           Did the decision explain its MRFC on its own somewhere else?
    Not other than just discussed. The provenance of "slow-paced and non-
7   competitive" is particularly impenetrable, cabalistic.
            We are back to the same simple, repetitive, one or two-step tasks
8   of decision #2, which the AC reversed, perhaps not doubting that Mr.
    Malveaux could perform easy tasks in the abstract, but clearly doubting
9   his ability to do so in reality and asking that Dr. Ruxin be considered
    further, which he wasn't.
10
    ECF No. 21, pgs. 17-18.
11

12          Plaintiff's argument, which is derivative of errors argued above, is also

13  unpersuasive for the reasons discussed above.  First, the Court finds no error with respect to the

14  ALJ's evaluation of statements and testimony provided by plaintiff and his wife.  Second, the

15  Court finds no error with respect to the ALJ's reliance on Dr. Akins' expert testimony.  Third, the

16  ALJ did not err with respect to evaluation of Dr. Ruxin's April 2012 opinion.  Finally, while

17  plaintiff is correct that the ALJ does not explain why he found plaintiff limited to frequent contact

18  with co-workers and supervisors but less frequent contact with the public, given that Dr. Akins

19  identified limitations only as to public contact, the finding is consistent with the evidence.

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1    **IV.  CONCLUSION**

2              Based on the foregoing, the Court concludes that the Commissioner's final

3    decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

4    ORDERED that:

5              1.      Plaintiff's motion for summary judgment, ECF No. 21, is denied;

6              2.      Defendant's motion for summary judgment, ECF No. 34, is granted;

7              3.      The Commissioner's final decision is affirmed; and

8              4.      The Clerk of the Court is directed to enter judgment and close this file.

9

10

11   Dated:  September 30, 2020

12                                                        DENNIS M. COTA
                                                          UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24